IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jason Moulton, # 305633,<br><br>                           Petitioner,<br><br>    vs.<br><br>Warden Leroy Cartledge,<br><br>                           Respondent. | Civil Action No. 6:14-2666-DCN-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at the McCormick Correctional Institution of the South Carolina Department of Corrections. The petitioner was indicted by the Richland County Grand Jury in December 2003 for murder (2003-GS-40-04594) (App. 880–81). On October 18–20, 2004, the petitioner was tried by jury before the Honorable James R. Barber (App. 1-759, 882). The petitioner was represented by public defenders Fielding Pringle and Deborah Ahrens at trial (App. 1). The jury found the petitioner guilty of the lesser-included offense of voluntary manslaughter (App. 746). On October 20, 2004, Judge Barber sentenced the petitioner to thirty years in prison (App. 746–58, 882).

## **FACTS**

***Trial***

On April 12, 2001, at about 10:00 p.m., the petitioner shot and killed a rival crack dealer, Patrick Bryant ("the victim"), at the residence of Leonta Capers in Richland County in front of several witnesses.  Mr. Bryant's cousin, Travis Johnson, testified at the petitioner's trial that he, the victim, and Sherrema Chitty, were all sitting in the living room of the house where the petitioner dealt drugs (App. 206–07, 209).  The petitioner came into the living room from a back bedroom, approached the victim, and asked him to return the sweater that the victim was sitting on.  The petitioner began arguing with the victim over a particular seat in the living room (App. 213, 347).  The victim did not respond to the petitioner but got up and left the room.  The victim gave the petitioner the sweater before leaving the room with Johnson (App. 213-16).  As the two men exited the house, Johnson testified that he heard shots fired and immediately hit the ground (App. 218).  Johnson "got right up after the shots" and "saw the [petitioner] running" carrying a gun (App. 218–19).  Johnson testified that neither he (Johnson) nor the victim had a weapon that night (App. 223)

Chitty also testified at the petitioner's trial and stated that she had seen the petitioner with a gun prior to the night of the shooting (App. 352).  On the night of the shooting, Chitty said that the victim told her he would talk to her later as he left the house with Johnson.  She testified that the petitioner followed the victim and "pulled the gun out and he started shooting" at the victim as he was walking away (App. 348, 349).  Additionally, Leonta Capers, who was in her bedroom at the time,  testified "I didn't pay attention to the first shot because it sounded like a book falling on the floor. . . . Then my niece stated screaming, "Sherrema.  He shot Pat. . . . "(App. 268).

Antonio Clemens, Ms. Capers' fiancé, arrived at the Capers house as the shooting took place.  He testified that he saw two men walk out of the house and saw two

shots fired.  He could not identify the men exiting the house or the man shooting the gun (App. 424-25).  Richland County Sheriff's deputy Dale L. Jones, Jr., responded to the scene shortly after the shooting (App. 186).  He testified that no weapon was found around the victim (App. 191).

### Direct Appeal

On October 25, 2004, the petitioner filed a timely notice of appeal (doc. 15-5). On April 18, 2006, Joseph L. Savitz, III, Chief Attorney with the South Carolina Office of Appellate Defense, filed a final *Anders* brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) (App. 761-66).[1]  Appellate counsel raised the following issue in the direct appeal:

> The judge erred by preventing defense counsel from cross-examining a key State's witness, who was an admitted crack addict, about the effects of crack cocaine on the user's perceptions and behavior, since this expert testimony would have been relevant to appellant's claim of self-defense.

(App. 764).  Appellate counsel also submitted a request to be relieved as counsel because "in his opinion, appellant's appeal [was] without legal merit sufficient to warrant a new trial" (App. 767).

On April 19, 2006, the Clerk of the South Carolina Court of Appeals advised the petitioner that he could "file with this Court a *pro se*, [sic] brief addressing any issues you believe the Court should consider in this appeal." (doc. 15-7).  However, the petitioner did not file a *pro se* brief.

In an unpublished opinion filed May 29, 2007, the South Carolina Court of Appeals dismissed the petitioner's direct appeal (App. 770–71).  The court also granted appellate counsel's motion to be relieved as counsel (App. 771).  On June 14, 2007, the court issued the remittitur (App. 772).

---

[1]  The final *Anders* brief contained in the PCR Appendix is missing page 4.  The respondent has attached page 4 (doc. 15-6 at 1) separately to its return.

3

***PCR***

On February 1, 2008, the petitioner filed an application for post-conviction relief ("PCR") asserting that he received ineffective assistance of counsel at his trial (App. 773–80). The State made its return on January 6, 2009 (App. 781–86). On January 12, 2009, Jeremy A. Thompson, the petitioner's PCR counsel, filed an amended PCR application on the petitioner's behalf, raising the following allegations of ineffective assistance of counsel:

> 1) Defense counsel was ineffective for requesting a jury charge on the lesser-included offense of voluntary manslaughter;
>
> 2) Defense counsel was ineffective for failing to object to the State's request to charge the lesser-included offense of voluntary manslaughter;
>
> 3) Defense counsel was ineffective for requesting a jury charge on transferred intent for the lesser-included offense of voluntary manslaughter;
>
> 4) Defense counsel was ineffective for failing to request a jury charge on the lesser-included offense of involuntary manslaughter;
>
> 5) Defense counsel was ineffective for failing to request a jury charge that the doctrine of transferred intent is also applicable for someone acting in self-defense;
>
> 6) Defense counsel was ineffective for failing to object to a jury charge which stated that if the jury found that the Applicant intentionally tried to kill his intended victim but instead hit an unintended target, then the jury had to find him guilty of murder or voluntary manslaughter;
>
> 7) Defense counsel was ineffective for failing to call witnesses who could have substantiated the Applicant's defense at trial;
>
> 8) Defense counsel was ineffective for failing to request a jury charge on the doctrine that lawful guests have no duty to retreat.

(App. 787–88).

An evidentiary hearing was held before the Honorable Alison Renee Lee on January 14, 2009, at which time the petitioner was present and represented by Thompson (App. 790–842).  In an order on filed March 29, 2012, Judge Lee denied the application and dismissed the petitioner's PCR application *with prejudice* (App. 869–79).

**PCR Appeal**

On April 16, 2012, the petitioner appealed the PCR court's decision (doc. 15-8).  On December 27, 2012, Breen Richard Stevens, an Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a petition for writ of certiorari raising the following issues:

> I. The PCR court reversibly erred by finding counsel's performance was not deficient for requesting a jury instruction on the lesser-included offense of voluntary manslaughter under a theory of transferred intent where the person shot did not pull a gun on Petitioner, and where the jury found Petitioner guilty of voluntary manslaughter.

> II. The PCR court reversibly erred by finding counsel's performance was not deficient for failing to request a jury instruction on the lesser-included offense of involuntary manslaughter where Petitioner was armed in self-defense, where Petitioner testified that he panicked and "just started shooting trying to . . . get out of the house," and where the jury found Petitioner guilty of voluntary manslaughter rather than murder.

> III. The PCR court reversibly erred by finding counsel's performance was not deficient for failing to request a jury instruction on transferred intent in the context of self-defense.

(Doc. 15-9).

The State filed its return to the petition for writ of certiorari on May 9, 2013 (doc. 15-10).  On June 18, 2014, the South Carolina Court of Appeals denied the petition (doc. 15-11).  The remittitur was issued on July 7, 2014 (doc. 15-12).

5

## **FEDERAL PETITION**

On July 2, 2014, the petitioner filed his § 2254 petition (doc. 1). On September 25, 2014, the respondent filed a motion for summary judgment (doc. 14). By order filed September 25, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 16). On October 23, 2014, the petitioner filed a response in opposition (doc. 24)

In his federal petition the petitioner makes the following claims:

Ground One: The judge erred by preventing defense counsel from cross-ex. a key State's witness, who was an admitted crack addict, about the effects of crack cocaine on the user's perceptions and behavior since this expert testimony may have been relevant to appellant's claim of self-defense.

Supporting Facts: See: ATTACHED SHEET(S) 1 of 3 – 3 of 3

Ground Two: SEE ATTACHED SHEET(S) B-1

The PCR court reversibly erred by finding counsel's performance was not deficient for requesting a jury instruction on the lesser-included offense of voluntary manslaughter under a theory of transferred intent where the person shot did not pull a gun on Petitioner, and where the jury found Petitioner guilty of voluntary manslaughter.

Supporting Facts: SEE ATTACHED SHEET(S) 1 of 19 – 5 of 19 and 17 of 19 – 19 of 19

Ground Three: SEE ATTACHED SHEET(S) B-1

The PCR court reversibly erred by finding counsel's performance was not deficient for failing to request a jury instruction on the lesser-included offense of involuntary-voluntary manslaughter where Petition was armed in self-defense, where Petitioner testified that he panicked and "just started shooting trying to . . . . get out of the house," and where the jury found Petitioner guilty of voluntary manslaughter rather than murder.

Supporting Facts: SEE ATTACHED SHEET(S) 6 of 19 – 9 of 19 and 17 of 19 – 19 of 19

6

Ground Four: SEE ATTACHED SHEET(S) B-2

The PCR court reversibly erred by finding counsel's performance was not deficient for failing to request a jury instruction on transferred intent in the context of self-defense.

(Doc. 1 at 4–9; doc. 1-1 at 1–26).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.

1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Exhaustion

The parties agree that the petitioner has exhausted his state court remedies on all the grounds presented in his federal habeas petition.

### Merits

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

8

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo. See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Ground One*

The petitioner claims that trial counsel should have been allowed to cross-examine a witness regarding the effects of crack cocaine because that information was relevant to his claim of self-defense under South Carolina Rule of Evidence 401 and South Carolina case law. Specifically, the petitioner argues the testimony was relevant in that his "apprehension of danger would have been heightened by the fact that he was in a crackhouse" (doc.1 at 21).

Habeas relief is restricted to claims alleging an improper application of federal law. 28 U.S.C. § 2254(d)(1) (application shall not be granted unless the claim was based on an improper application of federal law); *see also Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States.")
(internal quotations and citations omitted) (emphasis in original). Evidentiary rulings are
generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993)
("[A] claim about the admissibility of evidence under state law rarely is a claim upon which
federal habeas corpus relief can be granted."). Evidentiary rulings will not be considered
in federal habeas "'unless [the] erroneous evidentiary rulings were so extreme as to result
in a denial of a constitutionally fair proceeding.'"  *Barbe v. McBride*, 521 F.3d 443, 452 (4th
Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)).  Thus, the only
proper inquiry, if any, is whether the admission of the evidence itself so infected the entire
trial that the resulting conviction violated due process. *Estelle v. McGuire*, 502 U.S. 62, 72
(1991).

During the petitioner's trial, trial counsel attempted to question a witness
regarding the use of crack cocaine.  Trial counsel stated, "Crack cocaine makes you do
things that you think you never could do" and looked for a response from that witness.
Counsel for the State then objected, and the trial court sustained the objection (App. 296).
Trial counsel did not later proffer the witness's testimony regarding that line of questioning
(App. 338–40).  For that reason, this issue was not preserved for appellate review under
South Carolina law. *See State v. Schmidt*, 342 S.E.2d 401, 402–03 (S.C. 1986) (citing *State
v. Roper*, 260 S.E.2d 705 (S.C. 1979) ("Ordinarily, this Court will not review alleged error
of the exclusion of testimony unless a proffer of testimony is properly made on the
record.")).  Nevertheless,  exclusion of testimony regarding the effects of crack cocaine was
not so extreme that it resulted in the denial of the petitioner's constitutional rights to a fair
proceeding.  Accordingly, Ground One is not cognizable in federal court, and it cannot be
a basis for habeas relief.  In his response to the motion for summary judgment, the
petitioner does not address Ground One, but proceeds directly to Ground Two.
Accordingly, it appears that the petitioner has either abandoned Ground One (doc. 24 at
1), or at least has recognized that it is not a viable claim in this federal habeas corpus
action.

10

### *Ineffective Assistance of Counsel*

Grounds Two, Three, and Four relate to ineffective assistance of counsel. To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### *Ground Two*

The petitioner argues that trial counsel were ineffective for requesting that the trial court charge the jury with voluntary manslaughter, a lesser included offense of murder. The PCR court rejected this same claim, finding trial counsel were not ineffective for requesting the charge as part of their strategy to get the petitioner the least amount of time possible, which the PCR court noted was a valid strategy. The respondent submits that the

11

PCR court's conclusion is based on a reasonable finding of fact and application of federal

law and should not be disturbed in this habeas action. This court agrees.

The PCR court found as follows:

The trial judge is to charge the jury on a lesser-included offense if there is any evidence from which the jury could infer that the lesser, rather than the greater, offense was committed. *State v. Gourdine*, 322 S.C. 396, 472 S.E.2d 241 (1996). This Court finds no error in the trial court's decision to submit voluntary manslaughter as a lesser-included offense of the indicted offense of murder. The Applicant's testimony indicates that the Applicant thought both the victim and his associate were attempting to rob him of his drugs or his money, and that he feared physical violence from the "two." Voluntary manslaughter is defined as the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420 (2000). The overt act that produces the heat of passion must be made by the victim. *State v. Lowry*, 315 S.C. 396, 399, 434 S.E.2d 272, 274 (1993) (Where death caused by use of a deadly weapon, words must be accompanied by appearance of an assault by some overt threatening act—which could have produced heat of passion); *State v. Wiggins*, 330 S.C. 538, 549, 500 S.E.2d 489, 495 (1998) ("fear can constitute a basis for voluntary manslaughter" as the mind can be rendered incapable of cool reflection by a number of strong emotions); *State v. Johnson*, 333 S.C. 62, 65, 508 S.E.2d 29, 31 (1998) ("Although words alone may not constitute sufficient legal provocation, words accompanied by some overt, threatening act may be sufficient."). There was some evidence for the jury, as the sole fact finder, to find that there was a nonverbal overt act by the victim in order to form the requisite sufficient legal provocation for voluntary manslaughter.

It is not ineffective assistance of counsel to argue mutually exclusive concepts. Self-defense, by its nature, can satisfy the "any evidence" test for sufficient legal provocation and if there is "any" evidence of sufficient legal provocation, manslaughter is a proper jury charge as a lesser-included offense. The purpose of the jury is to sort it all out. *State v. Lowry*, 315 S.C. 396, 434 S.E.2d 272 (1993). Here, there is testimony which, if believed, tends to show that the decedent and Applicant were in a heated argument and that the decedent was about to initiate a physical encounter when the shooting occurred. To warrant eliminating the offense of manslaughter, it should very clearly appear that there is no evidence whatsoever tending to

> reduce the crime from murder to manslaughter. *State v. Norris*, 253 S.C. 31, 168 S.E.2d 564 (1969). This Court is not convinced by the Applicant's allegations that voluntary manslaughter is inapplicable to the case at hand. In addition, the Applicant and trial counsel testified that the goal was to get the least amount of time possible, and trial counsel testified that because the victim was shot in the back an acquittal was extremely unlikely, so the strategy was to pursue voluntary manslaughter. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992); *see also Dempsey v. State*, 363 S.C. 365, 610 S.E.2d 812 (2005) and *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). Trial counsel articulated valid strategic reasons for requesting voluntary manslaughter.

(App. 873–74).

In his response, the petitioner contends that the victim (Bryant) was not the person arguing with the petitioner; rather it was Johnson who reached into his waistband and pulled out a gun (doc. 24 at 3). The petitioner writes: "Thus the record clearly indicated that it was Johnson who not only argued with Petitioner . . . . . [*sic*] but also made the sole overt act causing Petitioner to panic and draw his own gun in self-defense" (*id*.). The petitioner also states that he "just shot and ran out of the house, he was scared for his life and was just trying to protect himself and get out of the house" (*id*. at 3–4). The petitioner appears to be arguing that *if* he had shot Johnson, not Bryant (the victim), the evidence would have supported a conviction for voluntary manslaughter (*id*. at 4). The petitioner contends that Johnson's apparent intent to shoot the petitioner cannot be transferred to the victim (Bryant), and that trial counsel's decision to seek a lesser included charge of voluntary manslaughter was not appropriate with respect to the victim (Bryant) (*id*.). Hence, it appears that the petitioner believes that had the trial court allowed the jury to consider the murder charge only, the petitioner would have been acquitted on the murder charge because there was no malice shown, *i.e.*, the petitioner did not specifically intend to kill the

13

victim (Bryant), as required by S.C. Code Ann. § 16-3-10 for a murder conviction (*id*. at 5–7).

The PCR court's factual determinations are entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."). The petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)). In this case, the PCR court found there was some evidence to support a voluntary manslaughter charge because there was testimony that the victim together with another person were provoking the petitioner. Thus, there was no transferred intent—rather, as one of the "two" who confronted the petitioner, the victim provoked the petitioner. There is no cause to discount these findings.[2] The PCR court reasonably applied federal law in finding trial counsel was not ineffective for requesting a voluntary manslaughter charge. Though the PCR court cited to state law in its order, these same principles are also part of the federal law set forth in *Strickland*. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Here, trial counsel believed it would be difficult to get an acquittal with two shots to the victim's back. Nonetheless, trial counsel still argued for a not guilty verdict (App. 672–93) . Thus, trial

---

[2] This is not to assert that counsel were deficient in requesting the charge of voluntary manslaughter based on a transferred intent theory. As the South Carolina Supreme Court has stated, "the applicability of the doctrine of transferred intent to voluntary manslaughter cases where the defendant kills an unintended victim upon sufficient legal provocation committed by a third party remains an unsettled question in South Carolina." *State v. Wharton*, 672 S.E.2d 786, 789 (S.C. 2009); *see also Jamison v. State*, 765 S.E.2d 123, 131 (S.C. 2014) ("The transferability of intent in a self-defense claim has not been recognized in South Carolina, and Respondent does not ask this Court to recognize it now."), *petition for cert. filed*, No. 14-9319 (U.S. Apr. 14, 2015). Counsel lowered the chances of a murder conviction by requesting a voluntary manslaughter charge.

counsel proceeded and was successful with a strategy to get the petitioner the least amount of time possible by requesting a voluntary manslaughter charge because the petitioner was not convicted of murder. *See State v. Fennell*, 531 S.E.2d 512, 515 (S.C. 2000) ("[A] defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred intent."); *see also State v. Starnes*, 698 S.E.2d 604, 608 (S.C. 2010) ("To warrant the court eliminating the charge of manslaughter, there must be no evidence whatsoever tending to reduce the crime from murder to manslaughter. If there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed, the defendant is entitled to such charge.")(citations omitted).[3]

At the PCR hearing, one of the petitioner's trial counsel, Ms. Pringle, testified that the State had refused to negotiate a plea to voluntary manslaughter and indicated to her that the State intended to go forward only on the murder charge (App. 798). Although it appears that at least one of the petitioner's trial counsel, at trial, was not aware of case law holding that transferred intent is not necessarily applicable in a voluntary manslaughter case, *State v. Locklair*, 535 S.E.2d 420, 424 (S.C. 2000) (holding that person convicted of capital murder not entitled to voluntary manslaughter instruction because was no evidence that defendant and victim had been in "heated argument" prior to murder), trial counsel's strategy to preclude a possible murder conviction was actually successful. (*see* App. 800–803). In fact, at the PCR hearing, the petitioner's trial counsel (Pringle) testified that

---

[3] A person convicted of voluntary manslaughter South Carolina at the time of the petitioner's conviction as well as today faces a sentence of two to thirty years. *See* S.C. Code. Ann. § 16-3-50 (2003) ("A person convicted of manslaughter, or the unlawful killing of another without malice, express or implied, must be imprisoned not more than thirty years or less than two years."). Judge Barber gave the petitioner the statutory maximum of thirty years (App. 758). It is not clear from the pleadings whether the petitioner would be vigorously asserting challenges to the request for a voluntary manslaughter jury charge or the alleged failure to request an involuntary manslaughter charge if the trial court had sentenced the petitioner at the "lower end" of the sentencing range. In any event, counsel for the petitioner, at sentencing, argued for a sentence below the statutory maximum (App. 756–57).

she felt that an acquittal on the murder charge was not likely because the victim had been shot *twice* in the back (App. 820).

The petitioner must show by clear and convincing evidence that the PCR court's credibility determinations were incorrect, *Wilson*, 352 F.3d at 858–59, and that these incorrect credibility determinations resulted in an improper adjudication by the PCR court. 28 U.S.C. § 2254(d)(2).   A petitioner has the burden of showing that trial counsel's performance was deficient and must overcome the strong presumption that a trial counsel's conduct falls within the broad range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89.  Moreover, "it is clear that the state PCR court's decision was not 'based on' any error that inheres in this finding."  *Wilson*, 352 F.3d at 859 (citing 28 U.S.C. § 2254(d)(2) (stating that the state court's decision must be "based on an unreasonable determination of the facts")).   Ground Two should, therefore, be dismissed.  *Jones v. Polk*, 401 F.3d 257, 269–70 (4th Cir. 2005) (speculative and vague allegations will not support habeas claim in federal court or justify the holding of an evidentiary hearing).

The PCR court properly found that trial counsel was not ineffective in requesting a voluntary manslaughter charge and that the petitioner was not prejudiced by trial counsel's request.  In any event, under South Carolina law, the trial court would have been  required to give a voluntary manslaughter instruction, even if counsel had not requested it. *See State v. Niles*, No. 27510, 2015 WL 1325887, at *3 (S.C. Mar. 25, 2015) (noting when a voluntary manslaughter charge is required and is not required).  Therefore, the petitioner is not entitled to relief based on the claims he raises in Ground Two.

### Ground Three

In  Ground Three, the petitioner asserts that trial counsel was ineffective for failing to request that the trial court charge involuntary manslaughter.  The petitioner asserts that there was evidence presented at trial that could have supported such a charge.  The PCR court rejected this same claim.   As the PCR court's finding was based on a reasonable finding of fact and application of federal law, there is no basis for habeas relief as to this claim.

16

In rejecting the petitioner's claim, the PCR court found the following:

Involuntary manslaughter is certainly a lesser-included offense of murder. *See State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999). Involuntary manslaughter was not charged at trial, and this Court agrees with the State that there is no evidence to require a charge for involuntary manslaughter. Applicant argues trial counsel was ineffective in failing to request a charge the jury [sic] on involuntary manslaughter. This court disagrees. Involuntary manslaughter is defined as: "(1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another with malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Reese*, 359 S.C. 260, 597 S.E.2d 169 (Ct. App. 2004) (citing *State v. Tyler*, 348 S.C. 526, 529, 560 S.E.2d 888, 889 (2002); *State v. Chatman*, 336 S.C. 149, 152, 519 S.E.2d 100, 101 (1999)). If there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given. *State v. Reese*, 370 S.C. 31, 36, 633 S.E.2d 898, 900 (2006).

The credible evidence of probative value is absolutely clear that the Applicant's conduct did not meet either of these two options. The Applicant freely admitted at both the trial and the PCR hearing that he was armed (even though he knew it was illegal because of his armed robbery conviction) to protect his "product" as a crack dealer. (Tr. pp. 549, 568). Crack dealing is not a lawful activity; therefore the second condition cannot apply. S.C. Code Ann. § 44-53-375 (Supp. 2010). Additionally, this Court finds, as a matter of law, that being an armed crack dealer is not "an unlawful activity not naturally tending to cause death or great bodily harm." Even assuming Moulton did not intentionally fire the gun at Bryant, by pointing the gun and firing, Moulton committed an unlawful act that would naturally tend to cause death or great bodily harm. Accordingly, trial counsel did not err in failing to request an involuntary manslaughter charge. Accordingly, involuntary manslaughter is inapplicable to the case at hand; and trial counsel was not ineffective and the Applicant was not prejudiced when involuntary manslaughter was not presented to the jury.

(App. 875–76).

Again, the PCR court's findings are entitled to deference in this action. There was no evidence to support a charge of involuntary manslaughter in the petitioner's case,

and the PCR court correctly found that trial counsel were not ineffective for failing to request a charge that was not supported by the evidence. *See Harris v. State*, 581 S.E.2d 154 (S.C. 2003) (finding trial counsel was not ineffective for failing to object to the trial court not charging involuntary manslaughter and further finding "[s]ince [petitioner] admitted that he intentionally fired warning shots in the direction of [victim], he was not entitled to the involuntary manslaughter charge, and thus could not have been prejudiced by the Court's failure to charge it"); *see also State v. Sams*, 764 S.E.2d 511, 515 (S.C. 2014) (collecting cases holding that a defendant who disclaims any intention to kill the victim does not require an instruction on involuntary manslaughter). As a result, the PCR court correctly concluded that the petitioner was not prejudiced by trial counsel's failure to request an involuntary manslaughter charge. Accordingly, the petitioner is not entitled to habeas relief based on the arguments he presents in Ground Three.

In his response to the motion for summary judgment, the petitioner asserts that he "was engaged in lawful activity, as he was armed in self-defense at the time the gun discharged" (doc. 24 at 10). Hence, the petitioner contends that the facts that he was previously convicted of a crime or had previously sold drugs were not relevant (*id*.). Counsel for the State, at the PCR hearing, vigorously opposed this contention and argued that it was based on an incorrect interpretation of *State v. Burris*, 513 S.E.2d 104 (S.C. 1999), by petitioner's PCR counsel (*see* App. 838–39). *See Burris,* 513 S.E.2d at 263 ("a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting"). Moreover, the petitioner appears to believe that the language in the PCR court's order of dismissal finding that the petitioner was not acting lawfully was, so to speak, "slipped in" by the State in its proposed order to the PCR judge (doc. 24 at 11). The petitioner's reliance on *Pauling v. State*, 565 S.E.2d 769 (S.C. 2002), is misplaced. *Pauling* involved a conviction on one murder charge and an acquittal on a second murder charge arising out of the same incident; after the trial

18

judge gave an *Allen*[4] charge, the trial judge then gave an obviously erroneous instruction, and the two trial counsel failed to object. *Pauling*, 565 S.E.2d at 772–73; *see also Workman v. State*, No. 27514, 2015 WL 1667710, at *2–3 (S.C. Apr. 15, 2015) (failure to object to "coercive" *Allen* charge constituted ineffective assistance of counsel).

The PCR's court finding that the petitioner was not engaged in lawful activity is not an unreasonable application of federal law. The state court record reveals that the petitioner was in a "crack house" selling his crack cocaine, a clearly unlawful activity. *See Hardin v. United States*, Cr. No. 2:01-559-DCN-1, 2007 WL 2225855, at *1 (D.S.C. July 31, 2007) ("His trial counsel was not deficient for failing to argue that crack cocaine is not a controlled substance. As noted above, crack cocaine is indisputably a controlled substance, and it would have been a fool's errand for his counsel to argue otherwise."). At the time of the shooting, the petitioner, then a convicted felon, possessed a gun, which he used to shoot the victim (Bryant). Possession of a firearm by a convicted felon is an illegal activity under both state and federal law. *See* 18 U.S.C. § 922(g)(1), (3); and S.C. Code. Ann. § 16-23-30 (2003).[5] Even if one were to assume that the possession of the firearm by the petitioner at the time of the shooting was "lawful" under *Burris*, the petitioner was still involved in the illegal sale of crack cocaine at the time of the shooting. Based upon the foregoing, the petitioner is not entitled to relief based on the claims he raises in Ground Three.

### Ground Four

In his final ground, the petitioner asks the court for habeas relief based on his claim that he received ineffective assistance of counsel because trial counsel failed to request a transferred intent instruction as part of the self-defense charge. The PCR court

---

[4] *Allen v. United States*, 164 U.S. 492 (1896).

[5] S.C. Code Ann. § 16-23-30 (2003) was subsequently amended in 2004, 2006, and in 2008.

denied the petitioner's arguments finding transferred intent "wholly inapplicable because according to [the petitioner's] own testimony the victim was not a mere innocent bystander; rather, the victim was part of the 'threat'" (App. 874). The PCR court's decision was based on a reasonable finding of fact and application of federal law and should not be disturbed.

As earlier stated, to prevail on an ineffective assistance of counsel claim, the petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id*.

A state court's finding on a claim of the ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents require this court, under 28 U.S.C. § 2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in *Strickland*, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000).

The PCR court found there was no evidence to support a transferred intent charge as part of the jury instructions on self-defense because there was no evidence to support that theory. It was clear from the petitioner's own testimony at trial that he did not inadvertently hit the victim while trying to defend himself from the victim's companion. The two were working together, and the petitioner viewed them as a united threat. In fact, on direct examination at trial, the plaintiff testified that Johnson and the victim (Bryant) were side by side, although one of the two was up further from the other (App. 577). Moreover, the plaintiff, on direct examination at trial, testified that when Travis Johnson pulled out a gun, the plaintiff grabbed his own gun and started shooting:

> Q    JASON, WHAT'S THE NEXT THING THAT HAPPENED?

20

A      THE NEXT THING THAT HAPPENED, TRAVIS DISPLAYED A GUN, AND WHEN HE'S ABOUT TO PULL IT OUT, YOU KNOW, I GOT PANICKED. LIKE EVERYTHING HAPPENED SO FAST, YOU KNOW. I PANICKED, AND I GRABBED MY GUN.

Q      WHERE WAS YOUR GUN, JASON?

A      MY GUN WAS IN MY POCKET.

Q      OKAY.  AND WHAT IS THE NEXT THING THAT HAPPENED?

A      I PULLED OUT MY GUN, AND I JUST STARTED SHOOTING JUST TRYING TO, YOU KNOW, GET OUT OF THE HOUSE SCARED.

Q      WELL, JASON, WHY DIDN'T YOU JUST LEAVE?

A      I COULDN'T LEAVE BECAUSE, YOU KNOW, THERE WAS ONLY ONE ENTRANCE TO GET IN AND ONE ENTRANCE TO GET OUT.

Q      AND THE DOOR, THE ONE ENTRANCE, WHERE WAS THAT DOOR?

A      LOCATED WHERE PATRICK AND TRAVIS WERE STANDING AT.

Q      AND WHAT HAPPENED WHEN YOU STARTED SHOOTING?

A      I JUST SHOT AND RAN OUT OF THE HOUSE, YOU KNOW,  I WAS SCARED, YOU KNOW.

Q      WHY WERE YOU SCARED?

A      I WAS SCARED FOR MY LIFE.  I THOUGHT THEY WERE GOING TO KILL ME.

Q       WHAT WERE YOU TRYING TO DO?

A      JUST PROTECT MYSELF AND GET OUT OF THE HOUSE.

Q      AFTER THIS HAPPENED, JASON, DID YOU GET OUT OF THE HOUSE?

21

      A      YES, MA'AM.

(App. 578–79).

      Trial counsel cannot be ineffective for failing to request a charge that could not have been given because there was no evidence to support that charge. *See, e.g.*, *State v. Moultrie*, 257 S.E.2d 730, 731 (S.C. 1979) ("An instruction should not be given unless justified by the evidence."); and *State v. Blurton*, 573 S.E.2d 802, 804 (S.C. 2002) ("If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury."). Moreover, the petitioner cannot have been prejudiced by trial counsel's failure to request a charge that the petitioner was not entitled to under the evidence presented. Hence, the petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(1). *See, e.g., Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable.").

      The petitioner cites to cases he also presented in his PCR appeal, which fail to point to a South Carolina case that adopts the concept of transferred intent in the self-defense context. As the State pointed out in its return to the petitioner's petition for writ of certiorari in his PCR appeal (doc. 15-10 at 9), the South Carolina Supreme Court had the opportunity to adopt this legal theory. *State v. Porter*, 239 S.E.2d 641 (S.C. 1977). The court in *Porter* noted the legal theory of transferred self-defense "is recognized in some jurisdictions to absolve a defendant who injures an innocent third party while attempting to defend himself from bodily harm." 239 S.E.2d at 643. However, "we need not now pass on the viability of this theory in South Carolina . . . ." *Id*.

      Trial counsel cannot be ineffective with respect to case law that was unsettled at the time of the petitioner's conviction and remains unsettled to the present day. *See Starnes*, 698 S.E.2d at 608 ("Trial courts often struggle with the difficult interplay between murder and the lesser-included offense of voluntary manslaughter, especially where a defendant claims he acted in self-defense.") (footnote omitted); *see also id.* at 608 n. 5

("We acknowledge courts have also struggled with the interplay of murder and involuntary manslaughter, especially when there is evidence of self-defense or accident.").

The petitioner has not shown that the state court's analysis of the transferred intent issue resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *See White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted). Therefore, the petitioner is not entitled to habeas relief on Ground Four.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 14) be granted. It is also recommended that the District Court deny a certificate of appealability. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

April 21, 2015
Greenville, South Carolina

23

**Notice of Right to File Objections to Report and Recommendation**

       The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

       Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

       **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

24
